UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROMINENCE ADVISORS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 C 4369 ) |
| JOSEPH DALTON, | ) Judge Sara L. Ellis ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This diversity action arises out of a short-lived employment arrangement between Plaintiff Prominence Advisors, Inc. ("Prominence") and its former employee, Defendant Joseph Dalton. After employing Dalton for a few months, and less than a month after entering into an employment agreement, Prominence fired Dalton. Prominence now brings this suit alleging that subsequent to Dalton's termination he breached the terms of the employment agreement by failing to return property belonging to Prominence, soliciting or encouraging one of Prominence's employees to resign from Prominence, and disparaging Prominence to that same employee (Count I). Prominence also alleges that Dalton has misappropriated Prominence's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, (Count II), and the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*, (Count III). Dalton moves to dismiss [10] the breach of contract claims in Count I relating to employee solicitation and non-disparagement, and Counts II and III in their entirety. Because Prominence alleges facts from which the Court could reasonably infer that Dalton disparaged Prominence and either solicited or encouraged its employee to resign, the Court denies the motion to dismiss the breach of contract claims. Because Prominence fails to allege facts that

plausibly show that Dalton misappropriated its trade secrets, the Court grants the motion to dismiss Counts II and III, without prejudice.

## BACKGROUND[1]

Prominence is an Illinois company that provides tools and services related to various software programs used in the health care field. Prominence hired Dalton, a citizen of Minnesota, as its Director of Technology. The parties entered into an employment agreement (the "Agreement") in April 2016 with an effective date of January 1, 2016. As part of the agreement, and as a condition of his offer of employment, Dalton agreed to several restrictive covenants contained in the Agreement. These included a Covenant Against Competition, Non-Solicitation of Customers, and Non-Solicitation of Employees. Doc. 1-1 § 4. The Agreement also included a requirement that Dalton return all property, including confidential information belonging to Prominence, at the end of his employment. Doc. 1-1 § 10. And the Agreement contained a non-disparagement clause, barring Dalton from disparaging Prominence. Doc. 1-1 § 11.

In furtherance of its business activities, Prominence has developed and maintained confidential information related to its operations ("Confidential Information"). This Confidential Information includes customer and potential customer information, employee agreements, training and review programs and techniques, personnel data, and other electronic data. Prominence protects this Confidential Information from disclosure to third parties, and Prominence gains a competitive advantage from keeping this information secret.

While Dalton was employed as the Director of Technology at Prominence, he was responsible for migrating electronic files containing Confidential Information from a cloud based

---

[1] The facts in the background section are taken from Prominence's Complaint and are presumed true for the purpose of resolving Dalton's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

system known as Aero FS to another system called DropBox. As part of the migration, Dalton backed up copies of the Confidential Information on an external hard drive. Additionally, Dalton has retained access to the DropBox folders on two of his personal devices.

Shortly after entering into the Agreement, Dalton's relationship with Prominence soured. On May 13, 2016, Prominence terminated Dalton's employment. Immediately after his termination, Dalton contacted another Prominence employee, Ben Reusser. Immediately after Dalton spoke with Reusser, Reusser informed Prominence that Dalton had contacted him and had relayed Dalton's version of events relating to the termination. Five days later, Reusser resigned from Prominence, stating that he could not reconcile what Dalton had told him about the termination with the story Prominence had told him and that he wished to continue working with Dalton.

As a result of Reusser's departure, Prominence was no longer able to perform on a high-value consulting agreement it had with Johns Hopkins, and was forced to terminate the agreement, forfeiting over $475,000 in fees.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

**ANALYSIS**

I. **Count I: Breach of Contract**

Prominence alleges that Dalton breached Sections 4, 10, and 11 of the Agreement. Section 4 includes the restrictive covenants barring Dalton from competing with Prominence, soliciting Prominence's customers, and soliciting Prominence's employees. Section 10 requires Dalton to return all property belonging to Prominence at the end of his employment with Prominence, including Confidential Information. And Section 11 bars Dalton from disparaging Prominence in anyway. Dalton moves to dismiss Prominence's breach of contract claims arising from alleged breaches of Sections 4 and 11 for failure to allege facts sufficient to establish a breach of those provisions. Dalton concedes that Prominence adequately alleges a breach of Section 10.

As an initial matter, Prominence argues that Dalton's motion to dismiss the parts of Count I arising from his alleged breaches of Sections 4 and 11 fails because a defendant cannot partially dismiss counts, and that by conceding the claim arising from the breach of Section 10 is properly pleaded, Dalton cannot dismiss the claim arising under Sections 4 and 11. This is a misunderstanding of the law. Parties may not partially dismiss *claims*. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). But claims and counts are not the same thing. *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1002 (N.D. Ill. 2017). Claims are grievances arising from particular sets of facts whereas counts are the legal theories upon which the plaintiff seeks redress for those grievances. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 876 (N.D. Ill.

2014) (stating claims are "the plaintiff's grievance and demand relief, and 'counts,' [are] legal theories by which those facts purportedly give rise to liability and damages"). Defendants can move to dismiss some claims brought under a single count without moving to dismiss the entire count. *Spriesch v. City of Chicago*, No. 17 C 1952, 2017 WL 4864913, at *2 (N.D. Ill. Oct. 26, 2017). The allegations underlying Prominence's claim for breach of Section 10 are Dalton's continued possession of the hard drive and access to the DropBox. These facts are not relevant to Prominence's claims for breach of Sections 4 and 11, which are premised on Dalton's conversation with Reusser following Dalton's termination. Prominence's claims for breach of Sections 4 and 11 and Section 10 are distinct claims, founded on distinct, unrelated facts; therefore, Dalton may move to dismiss them separately.

Section 4 bars Dalton from, among other things, hiring or soliciting for hire employees of Prominence or encouraging employees of Prominence to leave their employment with Prominence. Prominence alleges that Dalton breached Section 4 when he spoke with Reusser following his termination. Prominence provides no direct allegation that Dalton actually solicited Reusser or encouraged him to quit, but argues that such a solicitation or encouragement can reasonably be inferred from the fact that Reusser resigned from Prominence five days after his conversation with Dalton and stated at the time of his resignation that "he was unable to reconcile Prominence's explanation of Dalton's termination, with all of the information Dalton had shared with him; and he wanted to continue to work with Dalton." Doc. 1 ¶ 32. Drawing all reasonable inferences in favor of Prominence, the Court can reasonably infer that Dalton encouraged Reusser to leave his employment during this conversation. Therefore, Prominence plausibly states a claim that Dalton encouraged Reusser to leave his employment and join him in

5

some future endeavor, and the Court denies Dalton's motion to dismiss Prominence claim for breach of Section 4.

Section 11 bars Dalton from disparaging Prominence to any third party. Prominence bases this claim on the same conversation between Dalton and Reusser. Again, taking all reasonable inferences in favor of Prominence, the Court can reasonably infer that during that conversation Dalton disparaged Prominence, breaching his non-disparagement obligations under the Agreement.

Dalton does not contest any of the other elements of Prominence's breach of contract claim. Therefore, because Prominence has plausibly alleged that Dalton solicited or encouraged Reusser and that Dalton disparaged Prominence in the process of doing so, Prominence adequately states a claim for breach of Sections 4 and 11 of the Agreement and the Court denies the motion to dismiss these claims.

## II. Count II: Violation of the DTSA

Prominence alleges that Dalton violated the DTSA by misappropriating Prominence's trade secrets. Dalton moves to dismiss the DTSA claim arguing that Prominence has not alleged any facts to support its allegation that Dalton misappropriated its trade secrets and that Prominence did not allege what confidential information it claims Dalton misappropriated.

To state a claim for a violation of the DTSA, Prominence must allege that Dalton misappropriated a trade secret. 18 U.S.C. § 1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection."). The DTSA defines a trade secret as a variety of business related information that the owner of which has taken reasonable measures to keep secret and from which the owner derives economic value from that information not being generally known or readily ascertainable by others who could gain an economic

advantage from that information. 18 U.S.C. § 1839(3). For a DTSA claim to survive a motion to dismiss, a complaint need only identify the alleged trade secret in a general sense. *See, e.g.*, *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (allegation that defendant "was exposed to confidential information such as customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" is sufficient to survive a motion to dismiss); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) (allegation generally referencing business models, business plans, and product development plans was sufficient). The plaintiff must also allege that this trade secret was misappropriated. Misappropriation under the DTSA is defined as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "(B) disclosure or use of a trade secret of another without express or implied consent" under certain conditions. 18 U.S.C. § 1839(5). These two types of misappropriation can be categorized generally as Improper Acquisition and Improper Disclosure or Use, respectively. And "improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)

Prominence adequately alleges the existence of a trade secret. Prominence alleges that the Confidential Information Dalton continues to possess includes:

> a. customer information, including without limitation, mailing lists, customer lists, customer files, non-public information concerning present, past or potential customers and prospects, and methods for developing and maintaining business relationships with customers and prospects;

> b. prospect information, including without limitation, non-public information concerning prospects and potential partners and their contact information;
>
> c. employee agreements as well as training and review programs and techniques;
>
> d. personnel data of Prominence, including confidential employee information; and
>
> e. Prominence's electronic data.

Doc. 1 ¶ 15. This type of allegation, while high-level and general in nature is sufficient to allege the existence of information protectable as a trade secret. *See Wells Lamont Indus.*, 2017 WL 3235682, at *3; *Mission Measurement Corp.,* 216 F. Supp. 3d at 920–21. Prominence also alleges that it developed and maintains the Confidential Information "at considerable effort and expense," Doc. 1 ¶ 15, and that the "Confidential Information gives Prominence a competitive advantage not enjoyed by" those who do not possess that information. *Id.* ¶ 21. Therefore, Prominence has adequately alleged the existence of a trade secret.

Prominence has not adequately alleged misappropriation, however. In the Complaint, Prominence states, "While employed by Prominence, Dalton was tasked with migrating all of Prominence's electronic files, which contained Confidential Information to DropBox from a cloud service called Aero FS." Doc. 1 ¶ 16. Prominence claims Dalton still retains access to this DropBox folder on two of his personal devices and that when Dalton performed this data migration, he backed up the Confidential Information to an external hard drive, and he still possesses this hard drive. Additionally, in its Response, Prominence states, "Dalton orally threatened Prominence management that he will leave the Company and compete against it" prior to his termination. Doc. 16 at 14. Normally, a plaintiff cannot amend a complaint with the brief opposing the defendant's motion to dismiss, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683

8

F.3d 328, 348 (7th Cir. 2012), but a party may "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings," *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Prominence does not allege that Dalton made this oral threat in its Complaint, but it not inconsistent with the complaint that Dalton would have made such a threat. Regardless, this addendum does not save the claim.

Prominence does not make any allegation that if true would amount to misappropriation. As noted above, there are two ways to misappropriate trade secrets under the DTSA: Improper Acquisition and Improper Disclosure or Use. Prominence does not allege facts showing Improper Acquisition. To the contrary, Prominence alleges that Dalton acquired the information while performing his official duties while employed by Prominence. Improper means requires alleging "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," 18 U.S.C. § 1839(6), Prominence does not allege any of these, or anything similar, as the means through which Dalton acquired the hard drive or DropBox access; therefore, Prominence does not adequately allege misappropriation through Improper Acquisition.

Prominence also does not allege facts showing Improper Disclosure or Use. The Complaint and Response do not include any facts to support Prominence's bald allegation that Dalton disclosed the Confidential Information without authorization or consent. Prominence does not allege to whom Dalton disclosed the Confidential Information, when he did so, or any other information that if true, would tend to show that Dalton used or disclosed the information at all since his departure from employment with Prominence. Because Prominence does not allege any facts that raise a plausible inference that Dalton has misappropriated the Confidential Information, the Court grants the motion to dismiss Count II.

### III. Count III: Violation of the ITSA

Prominence alleges that Dalton violated the ITSA by misappropriating the same Confidential Information above. To state a claim for misappropriation under the ITSA, Prominence must allege that the information at issue is a trade secret, it was misappropriated, and that Prominence was damaged by the misappropriation. *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 817 (N.D. Ill. 2014) (citing *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 925, 357 Ill. App. 3d 265, 293 Ill. Dec. 28 (2005)). Dalton moves to dismiss this claim, arguing that Prominence does not allege that Dalton misappropriated any trade secret.

The ITSA, like the DTSA, defines misappropriation as improper acquisition or unauthorized disclosure or use. 765 Ill. Comp. Stat. 1065/2(b). Prominence alleges, on information and belief, that "Dalton has used and misappropriated Prominence's trade secrets." Doc. 1 ¶ 57. Prominence argues that its allegations that Dalton breached his employment contract by failing to return the hard drive or to delete his access to the DropBox constitute improper mean under the ITSA, which defines "improper means" as including "breach . . . of a confidential relationship or other duty to maintain secrecy or limit use." 765 Ill. Comp. Stat. 1065/2(a).

A claim for misappropriation can be grounded on information and belief only if "the facts are inaccessible to the pleader, and there is a reasonable basis to suspect the facts are true." *Maclean-Fogg Co. v. Edge Composites, L.L.C.*, No. 08 C 6367, 2009 WL 1010426, at *6 (N.D. Ill. Apr. 14, 2009) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir.1992)). Here, Prominence does not allege any basis upon which the Court could reasonably suspect that Dalton disclosed, used, or improperly obtained the Confidential Information. At most, in its Response, Prominence states that before his termination Dalton threatened to quit and

compete against Prominence. But Prominence does not allege that Dalton followed through on this threat or plans to follow through on this threat. Furthermore, the fact that Dalton continues to possess the Confidential Information and that this continued possession is a breach of his employment agreement also does not establish misappropriation through improper means. Prominence concedes in the Complaint that Dalton originally came into possession of the Confidential Information legitimately; the ITSA's improper acquisition prong only relates to how an individual came to possess the trade secret, not the circumstances of his continued possession. 765 Ill. Comp. Stat. 1065/2(b). The disclosure or use prong addresses misappropriation where the trade secrets were otherwise legitimately acquired, but Prominence does not allege any facts showing disclosure or use. Therefore, Prominence does not adequately allege misappropriation, and the Court grants Dalton's motion to dismiss Count III.

## CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part Dalton's motion to dismiss [10]. The Court denies the motion to dismiss claims under Count I and grants the motion to dismiss Counts II and III, without prejudice.

Dated: December 18, 2017

_____
SARA L. ELLIS
United States District Judge